IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DAVID GRIMSLEY,                          §
                                         §
                         Plaintiff,      §
                                         §  Civil Action No. 3:09-CV-2011-D
VS.                                      §
                                         §
RICHARDSON HOSPITAL                      §
AUTHORITY, d/b/a RICHARDSON              §
REGIONAL MEDICAL CENTER                  §
                                         §
                         Defendant.      §

MEMORANDUM OPINION
AND ORDER

In this case alleging age discrimination and retaliation, in violation of the Age

Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, the court

must determine whether plaintiff has raised a genuine issue of material fact. Concluding that

he has not, the court grants defendant's motion for summary judgment and dismisses this

action with prejudice.

I

In January 2007, James Horton ("Horton"), the Director of Pharmacy at defendant

Richardson Hospital Authority, d/b/a Richardson Regional Medical Center ("RRMC") hired

plaintiff David Grimsley ("Grimsley") to work as a pharmacy technician.[1]  At the time he

---

[1]In recounting the factual background, the court summarizes the evidence in the light most favorable to Grimsley as the summary judgment nonmovant and draws all reasonable inferences in his favor.  *See, e.g.*, *Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

was hired, Grimsley was 40 years old.  As a pharmacy technician, Grimsley was expected

to assist RRMC's pharmacists in the control, distribution, preparation, and charging of drugs

for patient care.  From January 2007 until November 2007 Grimsley did not have any

performance or disciplinary problems.

In November 2007 Matthew W. Moss ("Moss") replaced Horton as the Director of

Pharmacy.  When in February 2008 Moss received an email from Dianna Goodman-Lawson

("Lawson"), a cath lab nurse, in which Lawson complained that her Pyxis machine[2] had not

been filled "[a]gain," Moss issued a verbal warning to Grimsley.  In connection with this

verbal warning, Moss completed a disciplinary action notice on February 1, 2008 stating that

the cath lab Pyxis was not filled on two occasions and that Grimsley "has also been slow to

complete his daily tasks as compared to other technicians and new hires."  D. App. 20.

On February 14, 2008 Moss issued a "First Written Warning" to Grimsley stating that

Grimsley had failed to stock the Pyxis machines with the Add-Vantage piggyback antibiotics

for OPS (Outpatient surgery), ER (Emergency Room), and OR (operating room).  The

warning also noted that, on February 10 and 14, 2008, Grimsley "ha[d] made several errors

when refilling the emergency crash cart medication trays."  *Id*. at 21.  When Grimsley was

given the written warning, he questioned the validity of the report because he had not

---

[2]According to RRMC, a Pyxis machine is an automated machine designed to be stocked with specific drugs that may be immediately necessary for a particular procedure being performed in the hospital.  These machines are located in different rooms in the hospital, such as the operating or emergency room, where the need for the drugs is immediate.

worked on February 10, 2008 and was not presented with any evidence confirming the allegations asserted in the written warning.  According to Grimsley, Moss maintains that he may have been in error regarding the date, Moss was unsure about whether Grimsley actually made the mistake, and Moss concedes that he never showed Grimsley any evidence to confirm the allegations in the written warning.

On February 25, 2008 Grimsley was issued a "Second Written Warning."  This warning stated, "[w]hen filling the OR medications, [Grimsley] misfilled 2 anesthesia boxes. Both boxes were filled, sealed, and signed-off on by [Grimsley] prior to being delivered to OR."  *Id.* at 26.  It also stated that the missing medications were "clinically essential and must be available to anesthesia at the time of the procedure."  *Id.* And it concluded that, because this was the third time Grimsley had been counseled for failing to stock medications promptly and accurately, he was "to be immediately relieved from his duties and terminated."  *Id.*  Moss and Human Resources Manager Stacy Pinkerton ("Pinkerton") presented the written warning to Grimsley and informed him that his employment with RRMC was being terminated.  At the time, Grimsley was 41 years old.

Grimsley alleges that, after being issued the second written warning, he told Moss that he had not committed the mistakes and that the newly-hired, younger employees had committed them.  Grimsley also asserts that he informed Moss of a number of mistakes that the newly-hired employees had made.

Grimsley later filed a charge of discrimination with the Equal Employment

- 3 -

Opportunity Commission.  After receiving a right to sue letter, he filed the instant lawsuit alleging discrimination and retaliation, in violation of the ADEA.[3]  RRMC moves for summary judgment on both of Grimsley's claims.

## II

RRMC moves for summary judgment on claims as to which Grimsley will bear the burden of proof at trial.  Because Grimsley will have the burden of proof, RRMC can meet its summary judgment obligation by pointing the court to the absence of evidence to support Grimsley's claims.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once RRMC does so, Grimsley must go beyond his pleadings and designate specific facts showing there is a genuine issue for trial.  *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  An issue is genuine if the evidence is such that a reasonable jury could return a verdict in Grimsley's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Grimsley's failure to produce proof as to any essential element of a claim renders all other facts immaterial.  *See Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.) (citations omitted).  Summary judgment is mandatory if Grimsley fails to meet this burden.  *Little*, 37 F.3d at 1076.

---

[3]Grimsley initially sued Methodist Richardson Medical Center Foundation, Inc., d/b/a Methodist Richardson Medical Center ("MRMC") and MHSR Medical Center ("MHSR"). The parties stipulated to the dismissal of MHSR, and the court granted a motion for summary judgment filed by MRMC, but it permitted Grimsley to file an amended complaint to sue RRMC as a defendant.  Only RRMC remains as a party-defendant.

III

The court turns first to Grimsley's age discrimination claim.

It is unlawful under the ADEA "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  To prove age discrimination, Grimsley can rely on direct or circumstantial evidence.  *See, e.g.*, *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005) ("We have traditionally bifurcated ADEA cases into distinct groups: those in which the plaintiff relies upon direct evidence to establish his case of age discrimination, and those in which the plaintiff relies upon purely circumstantial evidence.").  "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 n.3 (5th Cir. 2003) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002) (internal quotation marks omitted)).  "In other words, to qualify as direct evidence of discrimination, an employer's comment 'must be direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that age was an impermissible factor in the decision to terminate the employee.'" *Read v. BT Alex Brown Inc.*, 72 Fed. Appx. 112, 119 (5th Cir. 2003) (quoting *EEOC v. Tex. Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996)).  Direct evidence of discrimination is rare, however.  *See, e.g.*, *Rutherford v. Harris Cnty., Tex.*, 197 F.3d 173, 180 n.4 (5th Cir. 1999) (sex discrimination case) (stating that because direct evidence is rare

in discrimination cases, plaintiff must ordinarily use circumstantial evidence to satisfy her burden of persuasion).

If Grimsley lacks direct evidence of discrimination, he can prove discrimination using the burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[4] As "[a] plaintiff relying on circumstantial evidence[,][he] must put forth a prima facie case, at which point the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for the employment decision." *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007). RRMC's burden is one of production, not of proof, and involves no credibility assessments. *See, e.g.*, *West*, 330 F.3d at 384-85. If RRMC articulates a legitimate, nondiscriminatory reason for the employment decision, Grimsley must introduce evidence that would enable a reasonable trier of fact to find that RRMC's purported explanation is merely pretextual. *See, e.g.*, *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378-79 (5th Cir. 2010). These three steps constitute the *McDonnell Douglas* framework. "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods.,*

---

[4]In *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009), the Supreme Court noted that it "has not definitively decided whether the evidentiary framework of *McDonnell Douglas* . . . is appropriate in the ADEA context." *Id.* at 175 n.2. The Court relied instead on a textual analysis of the ADEA to resolve the question whether a plaintiff can succeed on a "mixed-motives" claim of age discrimination. Absent Supreme Court authority, the court will follow the Fifth Circuit's post-*Gross* precedent and apply *McDonnell Douglas* to ADEA cases. *See, e.g.*, *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (applying *McDonnell Douglas* framework to ADEA claim).

*Inc.*, 530 U.S. 133, 143 (2000) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

IV

Under the *McDonnell Douglas* framework, Grimsley must first establish a *prima facie* case of age discrimination.  "To establish a *prima facie* case, a plaintiff need only make a very minimal showing."  *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (quoting *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 639 (5th Cir. 1985)) (internal quotation marks and brackets omitted).  A *prima facie* case merely raises the inference of discrimination, because the court presumes that the employer's acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 & n.44 (1977); *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978).  In an age discrimination case, a plaintiff is only required to show that "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Jackson*, 602 F.3d at 378 (quoting *Berquist*, 500 F.3d at 349) (internal quotation marks omitted).

RRMC does not dispute that Grimsley can satisfy the first three elements.  The court therefore considers only whether Grimsley has offered sufficient evidence to satisfy the fourth element.

In his summary judgment response, Grimsley does not present sufficient evidence to create a fact issue on this element.  Instead, he "objects" to RRMC's assertion that he cannot satisfy the fourth element because, in response to an interrogatory requesting that RRMC identify all persons who assumed any of the responsibilities previously performed by Grimsley, RRMC responded:

> Unknown, but Defendant will supplement this response should such data become available through a third party.  Any persons who assumed Plaintiffs' job duties subsequent to his termination are no longer employed by Defendant because it no longer operates the hospital where Plaintiff worked.

P. Br. 15 (quoting P. App. 50).  Grimsley also alleges, that when Human Resources Manager Pinkerton was  asked during her deposition who took over Grimsley's job responsibilities after his termination, she responded that "she did not know."  *Id.* at 16.  Grimsley argues these discovery responses establish that "[t]he Defendant kno[ws] the Plaintiff was replaced by someone younger," and that he has therefore established a *prima facie* case of age discrimination.  *Id.*  The court disagrees.

RRMC's discovery responses do not establish that Grimsley was replaced by someone outside the protected class or that he was replaced by someone within the protected class, but younger.  And Grimsley has not introduced any other evidence that would support such a finding. If Grimsley was dissatisfied with RRMC's discovery responses, he could have filed a motion to compel or sought this information through discovery from other persons or in other forms.

- 8 -

Grimsley does not argue in support of his *prima facie* case that he meets this element on the basis of a showing that he was "otherwise discharged because of his age." Nor can the court discern any evidence in the record that would support such a showing. Moreover, for the reasons discussed below, *see infra* § V, Grimsley has failed to introduce evidence that he was otherwise discharged because of his age. Because Grimsley has not established a *prima facie* case of age discrimination, RRMC is entitled to summary judgment on this claim.

## V

Even assuming, *arguendo*, that Grimsley has established a *prima facie* case of age discrimination, RRMC would nonetheless be entitled to summary judgment because Grimsley has failed to introduce evidence that would enable a reasonable jury to find that RRMC's legitimate, nondiscriminatory reason for his termination is pretextual.

## A

Once a plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for terminating the plaintiff. *See Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010). RRMC maintains that it terminated Grimsley's employment because he committed several errors and omissions while performing his duties as a pharmacy technician. Specifically, it posits that Grimsley was disciplined on two separate occasions for medication stocking errors and omissions, receiving a verbal warning on February 1, 2008 and a written warning on February 14, 2008.

And he was terminated on February 25, 2008 after he again failed to stock medications accurately and promptly.  Grimsley does not dispute that RRMC has satisfied its burden at this stage of the *McDonnell Douglas* burden shifting test.

B

1

Under the *McDonnell Douglas* burden-shifting framework, once the employer has produced evidence of a legitimate, nondiscriminatory reason for the adverse employment action, the plaintiff must demonstrate that the defendant's proffered "legitimate business reason" is not its true reason for the adverse employment action but is instead pretext for discrimination.  *See Reeves*, 530 U.S. at 143.  A plaintiff can establish pretext "by showing that the employer's proffered explanation is false or 'unworthy of credence.'"  *Jackson*, 602 F.3d at 378-79 (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (some internal quotation marks omitted)).  Although, as a general matter, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated," there are "instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory."  *Reeves*, 530 U.S. at 148.  "The ultimate question is whether the employer intentionally discriminated, and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish

that the plaintiff's proffered reason . . . is correct." *Id*. at 146-47 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993)).   In other words, "'[i]t is not enough . . . to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination.'" *Id*. at 147 (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 519).   The plaintiff might create "only a weak issue of fact as to whether the employer's reason was untrue and there [may be] abundant and uncontroverted independent evidence that no discrimination had occurred." *Id*. at 148.   Thus it is "'possible for a plaintiff's evidence to permit a tenuous inference of pretext and yet be insufficient to support a reasonable inference of discrimination.'" *West*, 330 F.3d at 385 (quoting *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 903 (5th Cir. 2000)); *see also Rosenblatt v. 7-Eleven, Inc.*, 2007 WL 2187252, at *12 (N.D. Tex. July 27, 2007) (Fitzwater, J.) (granting summary judgment where, assuming fact issue on question of pretext existed, fact issue was "weak," and there was no evidence that employee's age was ever considered in employer's decision to terminate his employment).

Moreover, where an employer offers more than one nondiscriminatory reason for taking the adverse employment action that the plaintiff challenges, "'[t]he plaintiff must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates.'" *Kretchmer v. Eveden, Inc.*, 2009 WL 854719, at *7 (N.D. Tex. Mar. 31, 2009) (Fitzwater, C.J.) (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001)), *aff'd*, 374 Fed. Appx. 493 (5th Cir. 2010); *see also Jackson v. Watkins*, 2009 WL 1437824, at *8

- 11 -

(N.D. Tex. May 21, 2009) (Fitzwater, C.J.), *aff'd*, 619 F.3d 463 (5th Cir. 2010).  As the Fifth

Circuit has explained in the analogous context of a Title VII discrimination claim:

> Because our precedent is clear that a plaintiff asserting a Title VII claim must rebut each of the defendant's nondiscriminatory reasons in order to survive summary judgment, [plaintiff's] contention that he is required to rebut only some of [defendant's] reasons is without merit.  We have long recognized that to satisfy step three of the *McDonnell Douglas* framework, a plaintiff must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates.  Where a plaintiff falls short of his burden of presenting evidence rebutting *each* of the legitimate nondiscriminatory reasons produced by the employer, summary judgment is appropriate.  Accordingly, [plaintiff] cannot withstand summary judgment without providing sufficient evidence to rebut each of [defendant's] nondiscriminatory reasons.

*Jackson v. Watkins*, 619 F.3d 463, 467 (5th Cir. 2010) (per curiam) (citations, quotation

marks, and original brackets omitted).   "The evidence offered to counter the employer's

proffered reasons must be substantial."  *Kretchmer*, 2009 WL 854719, at *7 (citing *Wallace*,

271 F.3d at 220).

## 2

RRMC alleges there were at least five separate instances in which Grimsley made a

pharmacy restocking error or omission, the combination of which resulted in his termination:

(1) failure to properly refill the Pyxis machine at some point prior to February 1, 2008; (2)

failure to properly refill the Pyxis machine on February 1, 2008; (3) failure to stock the Pyxis

machines with the Add-Vantage piggyback antibiotics for outpatient surgery, the emergency

room, and the operating room on February 13 and 14, 2008; (4) commission of "several errors" when refilling the emergency crash cart medication trays on February 10, 2008 and February 14, 2008; and (5) incorrectly filling two anesthesia boxes prior to delivery to the operating room on or around February 25, 2008.  Grimsley contests some, but not all, of these alleged workplace mistakes.

Grimsley questions the bases on which Moss relied to conclude it was Grimsley and not another pharmacy technician who failed to properly fill the Pyxis machine on February 1, 2008.  He posits that the "night shift pharmacy technicians were also responsible for filling the [P]yxis machines of which [Lawson] complained."  P. Br. 7. He also challenges the source of information regarding the alleged failure to stock the Add-Vantage piggyback in the Pyxis machine and failing to properly fill the crash cart medication trays on February 10, 2008 and February 14, 2008.  He points to deposition testimony in which Moss could not recall who from outpatient surgery or from the emergency room had called and complained or which technician had informed him of Grimsley's errors.  Regarding the February 10, 2008 alleged performance deficiency, Grimsley argues that he did not work on that date, and he notes that Moss was unsure whether Moss may have made an error on the date or whether Grimsley actually made the documented mistake.  He points to Moss's deposition testimony in which he conceded that he had never showed Grimsley any evidence to confirm the allegations in the written warnings and had never printed or even looked at the Pyxis transaction reports to confirm that Grimsley was at fault.  Grimsley alleges that, concerning

the February 14, 2008 incident, another pharmacy technician, Syja Cherian, was responsible for stocking the ER on that date and that he "was written up for a responsibility that was not his according to the Defendant's policy." *Id*. at 9.

Grimsley does not challenge RRMC's allegation that he failed to properly refill the Pyxis machine on one occasion prior to February 1, 2008 or that he incorrectly filled two anaesthesia boxes prior to their delivery to the operating room on or around February 25, 2008.  Nor does he argue these two instances were not reasons on which RRMC relied in terminating his employment.[5]  To the extent he has created a fact issue on whether he failed to accurately and promptly stock medications on the other documented occasions, it is only a weak fact issue.  For example, he does not allege or adduce evidence that he did not make the documented mistakes; rather, he merely challenges the evidence on which Moss relied in determining that Grimsley, as opposed to another pharmacy technician, was responsible.

It is not this court's place to decide whether Moss's procedures for determining who was at fault for the various medication stocking errors were reasonable or even whether Moss was mistaken in concluding that it was Grimsley who committed the various errors.

---

[5]The February 25, 2008 Disciplinary Action Notice states: "This is the third time [Grimsley] has been counseled for failing to stock medications promptly and accurately . . . . According to the job description, a pharmacy technician must refill floorstock promptly and accurately.  [Grimsley]'s failure to perform his duties as assigned have jeopardized patient care and safety.  Therefore, [Grimsley] is to be immediately relieved from his duties and terminated."  D. App. 26.

> The ADEA was not intended to be a vehicle for judicial second-guessing of employment decisions, nor was it intended to transform the courts into personnel managers. The ADEA cannot protect older employees from erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated.

*Rosenblatt*, 2007 WL 2187252, at *11 (quoting *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507-08 (5th Cir. 1988)) (internal quotation marks omitted). Here, there is simply no evidence that Moss's decision to terminate Grimsley's employment was impermissibly based on Grimsley's age.

Grimsley argues that Moss hired three younger pharmacy technicians soon after he was hired as Pharmacy Director. Even if true,[6] the mere fact that Moss hired younger employees would not enable a reasonable jury to find that Moss terminated Grimsley's employment based on his age. Nor would Grimsley's conclusory and unsubstantiated statement that "[t]he younger newly hired employees were not fired or disciplined for committing mistakes while [Grimsley] was terminated," and that "[he] was treated less favorably than [his] younger counter-parts . . . who had violated policy by failing to fill prescriptions in the Cath Lab, but were not fired" permit such a conclusion. P. App. 3.

---

[6]In his affidavit, Grimsley states: "Soon after Moss was hired he began firing the older pharmacy technicians and hiring younger employees. Mr. Moss hired Chrystal Hill, age twenty six (26), Marithel Ramirez, age twenty eight (28) and Eden Yohannes, age twenty three (23)[.]" P. App. 2. RRMC maintains that this statement is false because Chrystal Hill and Eden Yohannes were both hired by Horton in September 2007 and June 2007, respectively. RRMC also states that Moss hired Ancy Valiyaparampil, who was 51 years old at the time. Because the evidence on which RRMC relies is included in an appendix to RRMC's reply brief, and RRMC did not obtain leave of court to file the appendix, the court has not considered this evidence in deciding RRMC's motion.

- 15 -

Grimsley provides no details regarding which younger employees were treated more favorably, what mistakes they made for which they were not fired (i.e., the severity of the errors), or whether they were otherwise similarly situated to Grimsley in terms of years of service, employment record, or the number of times they had allegedly committed mistakes and the number and types of warnings received.  Grimsley's unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence.  *See, e.g.*, *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

Grimsley also alleges that "Moss told [him] that he was too slow in completing his daily tasks as compared to the younger technicians who had been recently hired."  P. Br. 17. In support, he cites to the February 1, 2008 disciplinary action notice, in which Moss stated "[Grimsley] has also been slow to complete his daily tasks as compared to other technicians and new hires."  D. App. 20.  He also cites his own affidavit, in which he alleges that, soon after Moss was hired as Pharmacy Director, he began hiring younger employees, including Chrystal Hill (age 26), Marithel Ramirez (age 28) and Eden Yohannes (age 23).  He cites no other evidence in support of his allegation that Moss told him he was too slow "as compared to the *younger* technicians who had been recently hired."  P. Br. 17 (emphasis added).  Viewing the evidence in a light most favorable to Grimsley as the summary judgment nonmovant and drawing all reasonable inferences in his favor, a reasonable jury could not find, based solely on Moss's statement that Grimsley was too slow "compared to

other technicians and new hires," D. App. 20, and Grimsley's allegation that Moss hired

three new employees, ages 23, 26, and 28, that Moss told Grimsley that he was too slow "as

compared to the *younger* technicians who had been recently hired," P. Br. 17.   Moss

nowhere mentions "younger" employees in the February 1, 2008 disciplinary notice and,

even assuming Moss did hire three younger employees after he became Pharmacy Director,

there is no evidence that he did not also hire older employees or that the "other technicians"

to whom Moss compared Grimsley were not the same age or older than Grimsley.   In short,

Grimsley's characterization of the statement in Moss's February 1, 2008 disciplinary action

notice as comparing Grimsley to "younger" employees is not supported by the evidence and

thus does not establish that RRMC's legitimate, nondiscriminatory reason for Grimsley's

termination is pretextual.

Nor do Grimsley's other arguments create a fact issue regarding pretext.   Grimsley

argues that he was terminated for alleged poor performance despite positive performance

evaluations, but he fails to cite to any evidence of a positive performance evaluation after

his promotion in May 2007.   He posits that RRMC failed to document the claimed

performance problems because Moss failed to preserve any of the Pyxis reports that would

contain evidence of the alleged errors.   But he cites no authority that would require an

employer to preserve underlying evidence of workplace errors when disciplinary actions are

recorded and preserved through, for example, the disciplinary action notice procedures

RRMC employed.   Grimsley argues that RRMC provided different explanations at different

times for its employment decision.  He cites to a "character reference" that Moss wrote for Grimsley in which Moss stated that, "[a]s a technician, [Grimsley] has always been willing to offer assistance by covering additional shifts and working extended hours when asked. He is a capable and dedicated employee who will take on any project that is assigned."  P. App. 31. There is nothing in this statement vouching for Grimsley's dedication and character that is inconsistent with RRMC's termination of Grimsley's employment for repeated mistakes and omissions in connection with stocking medications.

In sum, the most Grimsley has done is create a weak fact issue as to whether RRMC's proffered reason for his termination—his repeated failures to accurately stock medications—was the real reason for his termination.  As explained above, "[t]he ultimate question is whether the employer intentionally discriminated, and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason is . . . correct.'" *Reeves*, 530 U.S. at 146-47 (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 524) (ellipsis in original).  Aside from the fact that Grimsley was 41 years old when he was terminated, he presents no evidence that age, as opposed to some other reason, was the but-for cause of his termination.

Because a reasonable jury could not find that Grimsley's age was the but-for cause of his termination, RRMC is entitled to summary judgment dismissing his ADEA claim.

VI

The court next turns to Grimsley's retaliation claim.

A

The ADEA makes it unlawful for an employer to retaliate against an individual because he has opposed any practice made an unlawful employment practice by the relevant statutes. 29 U.S.C. § 623(d). As with discrimination claims, when the employee offers no direct evidence that the employer retaliated against him, retaliation claims under the ADEA are analyzed under the *McDonnell Douglas* burden-shifting analysis. *See, e.g.*, *Akop v. Goody Goody Liquor, Inc.*, 2006 WL 119146, at *10 (N.D. Tex. Jan. 17, 2006) (Fitzwater, J.) (citations omitted). At the first stage, Grimsley must establish a *prima facie* case of retaliation by demonstrating that (1) he engaged in a protected activity, (2) an adverse employment action occurred, and (3) a causal link existed between the protected activity and the adverse employment action. *Id.* (citing *Walker v. Norris Cylinder Co.*, 2005 WL 2278080, at *9 (N.D. Tex. Sept. 19, 2005) (Fitzwater, J.). The burden then shifts to RRMC to articulate a legitimate, nondiscriminatory reason for the allegedly retaliatory action taken. RRMC's burden is one of production, not of proof. If RRMC meets its production burden, Grimsley must offer sufficient evidence to create a genuine issue of material fact "either (1) that [RRMC's] reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that [RRMC's] reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic

(mixed-motive[s] alternative)." *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (third alteration in original) (some internal quotation marks and citations omitted).

## B

RRMC argues Grimsley has failed to establish a *prima facie* case of retaliation because he has conceded that he did not complain of age related discrimination until after he was terminated. RRMC thus argues that Grimsley has failed to establish the first or third element of a *prima facie* case for ADEA retaliation. Grimsley responds that he engaged in protected activity on or around February 14, 2008, when he asked Moss why the younger newly-hired pharmacy technicians were not being disciplined. He alleges that he also

> informed Moss on numerous occasions that the younger newly hired employees were incorrectly or failing to fill the pyxis machines and crash carts. Grimsley further asked Moss why he thought he was too slow in completing his daily tasks as compared to the younger technicians who had been recently hired. Within a week of raising these concerns to Moss the decision to terminate Grimsley occurred.

P. Br. 19. The arguments in Grimsley's brief are not supported, however, by the evidence he cites. Grimsley's affidavit provides the following:

> On February 25, 2008 I was issued a second written warning allegedly for failing to fill anesthesia prescriptions. *After being issued the second written warning* I told Moss that the mistakes had not been committed by me and that the newly hired younger employees had committed the mistakes. I further informed Moss of a number of other mistakes the newly hired employees had made and I was subsequently terminated by Moss at that time.

P. App. 3 (emphasis added). In this paragraph, Grimsley expressly states that it was not until

*after* he was issued the second written warning that he told Moss that the mistakes had been committed by the newly hired younger employees.  The written warning itself states that "[Grimsley] is to be immediately relieved from his duties and terminated."  D. App. 26. Thus even if the court were to assume that Grimsley's statement to Moss that the younger employees were the ones who had committed the mistakes would constitute a protected activity under the ADEA, a reasonable jury could not find from the summary judgment evidence that the decision to terminate Grimsley was made *after* Grimsley informed Moss of this fact.  Because Grimsley has produced no evidence that would enable a reasonable jury to find that a causal link existed between his comment that the younger employees were the ones making the mistakes and the decision to terminate his employment in connection with the issuance of the second written warning, Grimsley's retaliation claim must fail.

Even if the court assumes *arguendo* that Grimsley can establish a *prima facie* case of retaliation, this claim nonetheless fails for the additional reason that Grimsley has produced no evidence that would enable a reasonable jury to find that the reasons given for his termination—his repeated failure to stock medications promptly and accurately—are pretextual.[7]  The various mistakes and omissions documented in the February 1, 2008 disciplinary action notice, the February 14, 2008 first written warning, and the February 25, 2008 second written warning were all recorded *before* the allegedly protected activity occurred on February 25, 2008.  And there is simply no basis, other than the alleged order

---

[7]Grimsley does not argue the mixed-motives approach in his response brief.

of events—i.e., that Grimsley complained about the younger pharmacy technicians making the mistakes *before* he was terminated—that would permit a reasonable jury to find that the decision to terminate Grimsley's employment was based on Grimsley's accusing the younger employees of making the mistakes for which he was blamed.

Accordingly, RRMC is entitled to summary judgment dismissing Grimsley's ADEA retaliation claim.

\* \* \*

For the foregoing reasons, the court grants RRMC's July 20, 2012 motion for summary judgment and dismisses Grimsley's lawsuit with prejudice by judgment filed today.

**SO ORDERED.**

October 3, 2012.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

- 22 -